SO. CAL. EQUAL ACCESS GROUP
Jason J. Kim (SBN 190246)
Jason Yoon (SBN 306137)
101 S. Western Ave., Second Floor
Los Angeles, CA 90004
Telephone: (213) 252-8008
Facsimile: (213) 252-8009
scalequalaccess@yahoo.com

Attorneys for Plaintiff
JARDINE GOUGIS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARDINE GOUGIS,<br><br>      Plaintiff,<br><br>  vs.<br><br>2523 CANADA, LLC; and DOES 1 to 10,<br><br>      Defendants. | Case No.: 2:23-cv-03595-FLA (JPRx)<br><br>PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE RE: SUPPLEMENTAL JURISDICTION |

**I.    THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION SINCE IT HAS ORIGINAL JURISDICTION OVER PLAINTIFF'S AMERICANS WITH DISABILITIES ACT CLAIM AND BECAUSE THE UNRUH CLAIM IS SO RELATED, THE CLAIM FORMS PART OF THE SAME CASE OR CONTROVERSY.**

Under 28 U.S.C. § 1367 ("section 1367"), where a district court has original jurisdiction over a claim, it also has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." A state claim is part of the same "case or controversy" as a federal claim when the two "derive from a common nucleus of operative fact and are

such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." (Kuba v. 1-A Agr. Ass'n, 387 F.3d 850, 855-56 (9th Cir. 2004)).

### A. This Court Has Original Jurisdiction.

"The district courts shall have original jurisdiction of all civil actions arising under the… laws… of the United States." Here, Plaintiff has filed suit under the Americans with Disabilities Act, a federal statute. Accordingly, the Court has original jurisdiction, as the case is a civil action arising under United States law.

### B. The State Claim Is so Related It Forms Part of the Same Case or Controversy.

Citing Cal. Civ. Code section 51 subsection (f), "The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act," Plaintiff claims a violation of the Unruh Act based solely on the ADA violations alleged in the Complaint. [ECF No. 1].

Thus, the ADA and Unruh Acts are inextricably intertwined. A violation of the ADA is a per se violation of Unruh. The incident that forms the basis of both claims is identical. The Parties are identical. The witnesses are identical. All the documentary evidence (photographs, measurements, bank records, policies, etc.) are identical. All the case law, regulatory material, regulations, and accessibility standards necessary to demonstrate liability under both claims are identical. Plaintiff's counsel is not aware of a federal and state claim more intertwined than the ADA/Unruh pair.

Given the per se nature of the Unruh claim and that Plaintiff has only pled Unruh as being violated per se by the ADA violation, the claims form part of the same case or controversy.

//
//
//
//
//
//

## II. THE UNRUH CLAIM DOESN'T RAISE A NOVEL OR COMPLEX ISSUE OF STATE LAW, DOES NOT PREDOMINATE OVER THE ADA CLAIM, AND THERE ARE NO EXCEPTIONAL CIRCUMSTANCES OR COMPELLING REASONS FOR NOT GRANTING JURISDICTION.

The exercise of supplemental jurisdiction is mandatory, unless prohibited by section 1367(b) or one of the exceptions set forth in section 1367(c) applies. Under section 1367(c), a court may decline to exercise supplemental jurisdiction where: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

### A. The State Claim Doesn't Raise a Novel and/or Complex Issue of State Law.

Though some courts previously found inclusion of an Unruh Act violation in an ADA suit to present novel or complex legal issues best left to state courts, most of these cases centered on whether Unruh requires proof of intentional discrimination, a now resolved question. (See, for example, Harris v. Capital Growth Investors XIV, 52 Cal.3d 1142 (1991) and Gunther v. Lin, 144 Cal.App.4th 223 (2006), both overruled by Munson v. Del Taco, Inc., 46 Cal.4th 661 (2009)). There have been a slew of other arguments raised on this topic but all of them have been resolved or rejected by courts. To borrow the phrasing of one court, most examples "are either irrelevant or erroneous." (Moore v. Dollar Tree Stores Inc., 85 F. Supp. 3d 1176, 1193 (E.D. Cal. 2015) (rejecting the argument that an Unruh claim over a barrier raises a novel or complex issue of state court)). The bottom line is that "courts routinely exercise jurisdiction over supplemental claims under [Unruh], as these types of claims do not generally raise novel or complex

issues of state law." (Kohler v. Islands Restaurants, LP, 956 F. Supp. 2d 1170, 1175 (S.D. Cal. 2013) (collecting cases, including a Ninth Circuit case)).

### B. The State Claim Doesn't Substantially Predominate Over the ADA Cause of Action.

As stated above, the incident that forms the basis of both claims is identical. The parties are identical. The witnesses are identical. All the documentary evidence (photographs, measurements, bank records, policies, etc.) are identical. All the case law, regulatory material, regulations, and accessibility standards necessary to demonstrate liability under both claims are identical. Proving up the ADA claim is the same work and same effort as proving up the Unruh claim. As one court summarized:

> The state-law claims do not substantially predominate in terms of proof. Indeed, because the claims are mostly based on ADA violations, the proof for those claims is identical to that needed to prove violation of the ADA. For the state-law claims, Plaintiff need only make an additional showing of the particular "occasions" on which he encountered the barriers or was deterred from visiting the restaurant because of the barriers in order to make out his claims for statutory damages. To be sure, the availability of damages under state law means that the state-law claims present a slightly larger scope of issues and offer more comprehensive remedies. Nonetheless, the Court does not find that this causes the state-law claims to substantially predominate this litigation.

(Kohler v. Rednap, Inc., 794 F. Supp. 2d 1091, 1096 (C.D. Cal. 2011)).

Moreover, the mere fact that the Unruh claim has an additional remedy does not mean that it "substantially predominates" over the case. "Other than the availability of statutory damages under state law, the state and federal claims are identical. The burdens of proof and standards of liability are the same. Indeed, the Unruh Act specifically provides that a violation under the ADA also constitutes a violation of the Unruh Act." (Moore, 85 F.Supp.3d at 1194 (finding that an Unruh claim for statutory damages does not substantially predominate over the federal ADA claim); see also Schoors v. Seaport Village Operating Co., LLC, 2017 WL 1807954, (S.D. Cal. May 5, 2017)).

//

It is hard to reach a different conclusion on this topic. "Plaintiff's state and federal law claim involve the identical nucleus of operative facts, and require a very similar, if not identical, showing in order to succeed." (Delgado v. Orchard Supply Hardware Corp., 826 F. Supp. 2d 1208, 1221 (E.D. Cal. 2011) (finding no substantial predominance). This court should not decline supplemental jurisdiction on the basis that the Unruh claim for a statutory penalty substantially predominates. It simply does not. Encountering an ADA barrier is not only the standard for an ADA violation but is also the standard for recovery of statutory damages. "The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." (Molski v. M.J. Cable, Inc., 481 F.3d 724, 731 (9th Cir. 2007). In the present matter, Plaintiff is seeking no more than a single statutory minimum penalty assessment of $4,000.00.

C.  Supreme Court Has Repeatedly Stated that the Most Important Considerations are Factors of Economy, Convenience, Fairness, and Comity. These Factors Point Towards Supplemental Jurisdiction Being Exercised.

More importantly, even substantial predominance is found, the Court is required to take the next step and consider the impact of declining or exercising supplemental jurisdiction: the "justification" underlying the decision whether to maintain supplemental jurisdiction or dismiss claims, "lies in considerations of judicial economy, convenience and fairness to litigants…" (United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)). In fact, the Courts have recognized that judicial economy is the "essential policy behind the modern doctrine of pendent jurisdiction…" (Graf v. Elgin, J. & E. Ry., 790 F.2d 1341, 1347–48 (7th Cir.1986)). As the Supreme Court noted: the "commonsense policy of pendent jurisdiction" is "the conservation of judicial energy and the avoidance of multiplicity of litigation." (Rosado v. Wyman, 397 U.S. 397, 405 (1970)).

Here, if this Court were to decline to exercise supplemental jurisdiction over the state claim, it would result in the plaintiff pursuing the Unruh claim in state court while, simultaneously, prosecuting the ADA claim in federal court. Given that the plaintiff's state claim is predicated upon a finding that the ADA has been violated, this means that

almost identical cases would be prosecuted in two different forums. The Delgado court reasoned:

> Here, the claims arise from a common nucleus of operative facts. Both the federal and state law claims are based upon architectural barriers which infringe upon the accessibility to the OSH Store. Accordingly, this Court has supplemental jurisdiction over the state law claims. The Court will exercise supplemental jurisdiction over the state law claims. Here, the state issues are not unsettled or novel and complex. Plaintiff's state and federal law claim involve the identical nucleus of operative facts, and require a very similar, if not identical, showing in order to succeed. If this court forced plaintiff to pursue his state law claims in state court, the result would be two highly duplicative trials, constituting an unnecessary expenditure of plaintiff's, defendant's, and the two courts' resources. As a practical matter, plaintiff's state law claims for damages may be the driving force behind this action. To rule as OSH proposes, however, would effectively preclude a district court from ever asserting supplemental jurisdiction over a state law claim under the Unruh Act.

Delgado, 826 F. Supp. at 1221.

The Kohler case presents a lengthy analysis of the issue and concluded that fairness favored keeping the Unruh claim in federal court "rather than in a separate, and largely redundant, state-court suit." (Kohler, 794 F. Supp. 2d at 1096). Another framing of the analysis states that supplemental jurisdiction should be exercised to avoid "two parallel proceedings, one in federal court and one in the state system." (Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 787 (3d Cir. 1995). Here, the principles of judicial economy and fairness militates toward keeping Unruh.

In a recent opinion, the appellate court "agreed with the district court that the extraordinary situation created by the unique confluence of California rules involved here, which has led to systemic changes in where such cases are filed, presents "exceptional circumstances" that authorize consideration, on a case-by-case basis, of whether the "'principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine'" warrant declining supplemental jurisdiction." Arroyo v. Rosas, No. 19-55974, 2021 U.S. App. LEXIS 36510 (9th Cir. Dec. 10, 2021) at 5.

> Here, we are presented with a converse comity concern - namely, that retention of supplemental jurisdiction over ADA-based Unruh Act claims threatens to substantially thwart California's carefully crafted reforms in this area and to deprive the state courts of their critical role in effectuating the policies underlying those reforms. As noted earlier, the California Legislature recognized that its creation of a damages remedy for "construction-related accessibility claims" had imposed significant burdens on small businesses and created potential incentives for plaintiffs and their counsel to seek monetary settlements at the expense of forward-looking relief that might benefit the general public.

*Id.* at 21.

In fact, in *Gibbs*, the Court noted that *even in circumstances where the federal claim has been lost*, the Court may want to maintain supplemental jurisdiction where the state claim is so closely intertwined with the federal claims: "There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong." (Gibbs, 383 U.S. at 727.).

Further, filing in state court would cause a "high frequent litigant," as discussed later, such as Plaintiff to incur an unreasonable amount of financial burden in the amount of $1,000. Such financial burden would prohibit Plaintiff from enforcing Plaintiff's right to bring a substantial claim against individuals and entities who have injured Plaintiff in Plaintiff's right provided by ADA and applicable state statutes. Also, defendants take ADA cases filed in federal courts a lot more seriously in terms of resolving any and all issues, especially for remediating the violations that have injured Plaintiff because of the existence of statutory minimum of $4,000 per violation as well as award of attorneys' fees if successful on the merits. Without such financial incentive, defendants would not focus on swiftly remediating any and all ADA barriers at issue and would rather drag the litigation to trial, wasting time and resources for all parties and the Court.

Although some courts have declined supplemental jurisdiction under a "substantial predominance" standard, those decisions are scattered and cannot withstand serious scrutiny. But, more importantly, those other decisions never address the factors that the Supreme Court have said are essential, namely economy, convenience, fairness, and comity. As the *Moore* court stated, those decisions, "failed to address how declining jurisdiction served these the values of economy, convenience, fairness, and comity." (Moore, 85 F.Supp.3d at 1194.). It is hard to argue with the Moore court's conclusion that: "the Court's exercise of supplemental jurisdiction would best advance economy, convenience, fairness, and comity. The state and federal claims are so intertwined that it makes little sense to decline supplemental jurisdiction. To do so would create the danger of multiple suits, courts rushing to judgment, increased litigation costs, and wasted judicial resources." (Id.).

This is not just a calendar clearing exercise that the court is considering. Were the Court to deny federal jurisdiction to Plaintiff's state claims, Plaintiff would have to litigate these claims in parallel in state court, or abandon the right to file well-pleaded and meritorious claims in federal court entirely. Plaintiff's state claim is predicated on adjudication of the federal claim, over which this Court has original jurisdiction. This puts Plaintiff's claims in a complicated position, as the state court claim cannot reasonably be resolved without final resolution of the federal case, or risk inconsistent decisions on identical facts.

D.   There Are No Exceptional Circumstances for Declining Jurisdiction.

Five central district judges have issued more than 110 OSCs on this topic. While most have not identified any specific rationale in their orders identifying exceptional circumstances or compelling reasons for declining jurisdiction, some courts have been more expansive in their OSCs and cited heavily to California state law procedures and noted that plaintiffs seem to be forum shopping to avoid state court requirements. But a litigant choosing from two proper jurisdictions is not inappropriate forum shopping, is

not "exceptional," and does not provide a compelling reason to decline to exercise supplemental jurisdiction. As one court explained:

> [T]he fact that Plaintiff is "forum shopping" by filing suit in this Court rather than state court does not constitute a "compelling reason" for declining jurisdiction. There is no reason why Plaintiff should have to file his claims in state court instead. "This sort of forum-shopping is commonplace among plaintiffs and removing defendants alike and is not an 'exceptional' circumstance giving rise to compelling reasons for declining jurisdiction, as required by section 1367(c)(4)." Chavez, 2005 WL 3477848, at *2. The fact that Plaintiff and his counsel frequently file suits asserting disability rights violations does not change this conclusion. The Ninth Circuit has acknowledged that "[f]or the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1062 (9th Cir.2007). Nothing bars Plaintiff from frequently invoking a federal forum to remedy ADA violations.

(Kohler, 794 F.Supp.2d at 1096; see also Schoors v. Seaport Village Operating Co., LLC, 2017 WL 1807954, *5 (S.D. Cal. May 5, 2017) (adopting the same rationale)).

### III. UNRUH CLAIM DOESN'T RAISE A NOVEL OR COMPLEX ISSUE OF STATE LAW, DOESN'T PREDOMINATE OVER THE ADA CLAIM, AND THERE ARE NO EXCEPTIONAL CIRCUMSTANCES FOR DECLINING JURISDICTION.

California's "high-frequency litigant" statutes do not give reason under the § 1367(c) exceptions to decline supplemental jurisdiction. "High-frequency litigants" are defined by section 425.55 of the California Code of Civil Procedure as "A plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation" (Cal. Civ. Proc. Code § 425.55(b)(1)) or "An attorney who has represented… 10 or more high-frequency litigant plaintiffs in actions that were resolved within the 12-month period immediately preceding

the filing of the current complaint…" (Cal. Civ. Proc. Code § 425.55(b)(2)). Undoubtedly, many of plaintiff's counsel's clients fall within this definition.

However, this means little to the prosecution of a case. There are only three consequences in state court litigation for a plaintiff being identified as a high-frequency litigant. First, such plaintiffs must add some specific facts in their complaint and verify the complaint certifying that it comports with… the exact language of Fed. R. Civ. Proc. 11. (Cal. Civ. Proc. Code § 425.50(a)(4)). But those "facts" are either required under Federal Rule 26's initial disclosure requirement or readily available in discovery. Additionally, plaintiff's counsel is already subject to Rule 11 in federal court. Second, there is an additional $1,000 filing fee (Cal. Gov. Code § 70616.5), which is divided into the general fund and the trial court trust fund (Cal. Gov. Code § 68085.35). This fee serves to relieve workload to the trial courts. (2015 CA A.B. 1521 (NS) (September 10, 2015). Ironically, though, the workload of the trial courts would be massively increased if this Court were to decline supplemental jurisdiction. Finally, there are stay and early evaluation procedures in state court for these cases. But those same procedures—almost identical in nature—are available in the Central District with the ADA Disability Access Litigation program and use of ADR Form 20. A defendant can request and a court can sua sponte order the parties to participate in this process.

In any event, there is nothing unique in the state court procedures that are not replicated in some fashion in the federal system. It is not the federal court's task to decide that it likes state court procedures better and to force a plaintiff to take plaintiff's case to state court because of that preference. That is not a compelling reason.

IV.   **CONCLUSION**

Plaintiff respectfully requests this Court to continue to exercise supplemental jurisdiction over the Unruh Civil Rights Act claim because all of the *Gibbs* value factors weigh in favor of supplemental jurisdiction wherein dismissing the state claim would result in a refiling of the state claim in state court. Dismissing the action would offend the

notions of fairness, judicial economy, and convenience that are the cornerstone of the analysis about supplemental jurisdiction. Plaintiff's state law claim is premised on a violation of the ADA and Plaintiff seeks minimal statutory damages, such that his Unruh Act claim does not predominate over the ADA claim.

DATED:  June 13, 2023              **SO. CAL EQUAL ACCESS GROUP**

                                                     */s/ Jason J. Kim*
JASON J. KIM
Attorney for Plaintiff